Robert S. Holt et al., Respondents, *v.* Elmore P. Ross, President, etc., Appellant.

The rule that an agent in order to shield himself from liability must disclose his agency, is applicable to an express company, and is unaffected by the fact that it is the general business of such a company to act as agent for others. (Reynolds, C., dissenting.)

The drawee of a draft is supposed to know the signature of the drawer, but the same knowledge of the signature of an indorser is not imputable to him, and by acceptance and payment he does not admit or guaranty the genuineness of the signature of the payee.

A draft drawn upon plaintiffs was fraudulently taken from the post-office, the indorsement of the payee forged thereon, and the same was intrusted to defendant's company for collection, and was paid by plaintiffs upon presentation. It was not disclosed to them at the time that the express company was acting as agent. In an action to recover back the money paid, *held* (Reynolds, C., dissenting), that the company was liable.

(Argued June 18, 1873; decided September term, 1873.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 59 Barb., 554.)

This action was brought to recover back the amount paid the Merchants' Union Express Company upon a draft or bill of exchange, upon the alleged forged indorsement of the payee.

The facts found by the referee are in substance as follows : That the Merchants' Union Express Company, of which Elmore P. Ross is president, is a joint stock company, engaged in the usual business of express companies, and, among other things, in the collection of drafts and bills of exchange. That on or before the 15th day of January, 1867, the plaintiffs were indebted to the firm of Lamb, Quinlan & Co., of New Orleans, in the sum of $771.45. That on or about the said fifteenth day of January, they, by authority, drew a draft or bill of exchange on plaintiffs, for said sum, payable to the order of one T. D. Ford, and forwarded the same by mail to

said T. D. Ford, at St. Louis, State of Missouri. That said draft was never received or indorsed by said T. D. Ford, or any one on his behalf; but the letter inclosing it was taken from the post-office in St. Louis by some person unknown, and the name of "Thos. D. Ford," the payee thereof, written upon the back of said draft, by some person unauthorized to sign the name of the payee, and who had no title to the draft. That said draft, so indorsed, was afterwards presented by the defendant, the Merchants' Union Express Company, to the plaintiffs, for acceptance and payment, and the plaintiffs, without knowledge of the signature of the payee thereof, or that the indorsement of his name on said draft was not his genuine signature, paid the amount of the draft.

That the plaintiffs have since been compelled to pay said Lamb, Quinlan & Co the sum for which said draft was drawn. That the said defendant, the Merchants' Union Express Company, has refused to repay said amount, or any part thereof, to the plaintiffs, although said draft was, on the 9th day of February, 1867, tendered to them, and repayment of the amount, so as aforesaid paid said company, demanded. That the defendant acted in good faith, and had no knowledge or suspicion that the indorsement thereon of the name of said Thomas D. Ford was a forgery, or unauthorized by him, or that said Newton was not fully authorized to collect and receive the amount of said draft from the plaintiffs.

The referee found, as conclusions of law, that in the absence of any evidence that the said the Merchants' Union Express Company, or their agent so presenting the same, disclosed to the plaintiffs that they were acting in the collection of said draft as agents for any other person, they were liable to the plaintiffs for the amount so paid, and judgment was directed accordingly.

*Rollin Tracy* for the appellant. Defendant's agency being in issue by the pleadings and admitted voluntarily on the trial, plaintiffs are bound by such admissions and estopped

from denying them. (*Paige* v. *Willet,* 38 N. Y., 28; *Conger* v. *Bean,* 5 Lans., 322; *Potter* v. *Bennett,* 6 Barb., 144; *McDonold* v. *Christie,* 42 id., 39; *Paige* v. *Fazackery,* 36 id., 392.) The agency having been admitted, it was not necessary to prove it. (*Walrod* v. *Bennett,* 6 Barb., 145; *Crosbie* v. *Leary,* 6 Bosw., 313; *Bridge* v. *Payson,* 5 Sandf., 210.) Plaintiffs' acceptance and payment of the draft was a guaranty to defendant of all the signatures on it. (*Merch. Bk.* v. *N. J. Tr. Co.,* 6 How. U. S., 344; *Stoddard* v. *L. I. R. R. Co.,* 5 Sandf., 187.) The company, on paying the money to its principal, was discharged of its obligation and liability. (*Sweet* v. *Barney,* 24 Barb., 538; *Bk. of Com.* v. *Union Bk.,* 3 Comst., 230; *Turnbull* v. *Bowyer,* 40 N. Y., 460; *Price* v. *Neal,* 3 Bur., 1354; *Turnbull* v. *Bowyer,* 40 N. Y., 460; *Goddard* v. *Merch. Bk.,* 4 id., 149; *Bk. of Com.* v. *Union Bk.,* 3 Comst., 234; *Hoffman* v. *Bk. of Milwaukie,* 12 Wall, 186, 189. and cases cited; *Price* v. *Neal,* 3 Bur., 1354; 15 Penn., 238; 2 Ad. & El. [N. S.], 196; *Fitch* v. *Jones,* 5 El. & B., 238; *Asbourn* v. *Anderson,* 1 Ad. & El. [N. S.], 498; *Wilkerson* v. *Luterige,* 1 Strange, 648; Story on Bills, § 262; Story on Prom. Notes, 135, 379, 380, 387; Edwards on Bills & Prom. Notes, 208, 309, 310.)

*Robert Jackson* for the respondents. The burden of proving knowledge or notice of the agency was upon defendant. (*Canal Bk.* v. *Bk. of Albany,* 1 Hill, 287; *Mills* v. *Hunt,* 17 Wend., 333; S. C., 20 id., 431.) Plaintiffs paid defendant the money through a mutual mistake to which they had not contributed, and defendant must refund. (*Canal Bk.* v. *Bk. of Albany,* 1 Hill, 287; *Talbot* v. *Bk. of Rochester,* id., 295; *Coggill* v. *Am. Ex. Bk.,* 1 N. Y., 113; *Bk. of Com.* v. *Union Bk.,* 3 id., 237; *Kingston Bk.* v. *Ettinge,* 40 id., 391, 396; *Union Bk. of Troy* v. *Sixth Nat. Bk.,* 1 Lans., 13.)

EARL, C. The express company, when it presented the draft to the plaintiffs for payment and received payment, did

not disclose its agency; therefore it is liable, as if actually principal in the transaction. It was so decided in *Canal Bank* v. *Bank of Albany* (1 Hill, 287). It was not sufficient that the defendant acted as agent; to shield itself from liability it should have disclosed its agency. Such is the rule as to all agents. To shield themselves from liability for their acts they must give the names of their principals. Such is the rule in reference to the transfer of negotiable paper. If the transferer be only an agent, if he did not at the time disclose the name of his principal, and the bill or note proves to be a forgery, he is personally liable for the consideration received. (*Gurney* v. *Wormsley*, 4 Ellis & B., 133; *Morrison* v. *Currie*, 4 Duer, 79; 2 Parsons on Notes, 38.)

It matters not that the general business of the express company was to act as agent for others. It could have owned this draft and have collected it as principal. Knowledge in plaintiffs that defendant might have acted as agent was not enough; and it was not the duty of the plaintiffs to inquire, before paying, whether the defendant was acting as principal or agent. It was the duty of defendant, if it desired to be protected as agent, to have given notice of its agency. The drawees of a draft are supposed to know the signature of the drawer, but are not supposed to have the same knowledge of the signature of an indorser. By acceptance and payment the drawees do not admit or guaranty the genuineness of the indorsement by the payee. (*Canal Bank* v. *Bank of Albany, supra;* 1 Parsons on Notes, 322; id., 590.)

This is, therefore, a clear case for affirmance.

REYNOLDS, C. (dissenting). In this case the loss must fall upon one or the other of two innocent parties, and up to this time the express company has been deemed the proper party to suffer, and for that reason judgment passed against the defendant in the Supreme Court. This judgment proceeded upon the ground that when the agent of the express company presented to the plaintiffs, the drawees, the draft in question for payment upon what turns out to have been the forged

indorsement of the payee, it was not disclosed that the express company were acting as mere agents for some other person personally unknown to either party.

The draft was drawn in New Orleans on the 15th of January, 1867, upon the plaintiffs in New York, by their firm name of Holt & Co., to the order of T. D. Ford, and apparently indorsed "Thomas D. Ford, pay to bearer, Edward Duffy." In this form it came to the defendant's company from one Newton, of Boston, for collection. It was duly presented to the plaintiffs and paid, and the money remitted to Newton, according to his order.

I am of the opinion that the judgment below ought not to be sustained. Ordinarily, it may be assumed that possession of commercial paper, payable to bearer, or chattels of any kind, is *prima facie* evidence of title in the possessors. However it may be as to chattels, it is not absolutely true as to the mere holder of negotiable paper. The course of commercial business, the frauds continually perpetrated, and the caution with which such paper is negotiated in commercial circles, tends to the conclusion that in such cases the rule is not universal; that the mere personal possessor is supposed to have an immaculate title on his own account. Many conditions may readily be suggested by which such a presumption is largely qualified. Even if the presumption of ownership ought to be indulged as to individuals, it by no means follows that the same rule should obtain as against an incorporated company especially organized to transact business in the transportation of property of all kinds, in the transmission and collection of money and various other things, as agents or common carriers, and not ordinarily engaged in any other kind of business. I think that any such corporation, or joint stock association, organized under our laws, must in all cases be presumed to be doing business as mere agents, and unless the contrary is made expressly to appear they must be judged in their acts or defaults in that capacity. Presumptions are in one aspect founded upon the conduct of parties in the course of trade and business, and it will be presumed that

every person is orderly in the conduct of his affairs (1 Green-leaf on Evidence, §§ 38, 39); and it is certainly to be presumed that an express company, organized for the purpose of transporting property from one section of the country to another, is not engaged in the business of banking or in buying and selling commercial paper any more than a corporation organized for banking purposes is presumed to be engaged in making insurances upon lives or operating a railroad for the transportation of persons and property. It must be presumed. that every person or corporation engaged in any special employment conducts business with reference to it, and that the party is engaged in no other or a different kind of business.

The cases relied on to support the position of the plaintiff are not necessarily controlling. *The Canal Bank* v. *The Bank of Albany* (1 Hill, 289) was a controversy between two banking corporations, growing out of a payment by the plaintiff to the defendant of the amount of a draft sent to the defendant for collection, the name of the payee having been forged. The defendant, on presenting the draft and receiving the money, did not disclose the fact that it was acting as a mere collecting agent, and it was held liable as principal. This case was, no doubt, well decided. It is the business of banks to deal in commercial paper, both as owners and agents, and therefore, unless in that particular case the agency was disclosed, it might well be assumed that the dealing was that of a principal. That case is in principle quite unlike this, where the general business was that of agency merely. While in case of a bank it is fair to presume, from the usual course of dealing, that it is the real owner of all negotiable paper in its possession, it must be quite different in the case of an express company, which is commonly understood to be transacting its ordinary business, as a mere agent, for a reward. The case of *Mills* v. *Hunt* (17 Wend., 333; 20 id., 431) was the case of auctioneers, and stands upon a principle peculiar to that class of cases. There the firm of Mills Brothers & Co., auctioneers, had sold at auction a great num-

ber of parcels of goods belonging to different parties under a notice not disclosing the names of the real owners. The bills of the sale to different parties were made out as if the purchase had in fact been made of Mills Brothers & Co., as owners. Hunt, in that case, sued the auctioneers for the non-delivery of a parcel sold him, and thus the question arose. In speaking for the Court of Errors in that case (20 Wend., 434) the Chancellor said: "At this day the law must be considered as settled that a vendor or purchaser dealing in his own name without disclosing the name of his principal is personally bound by his contract; and it makes no difference that he is known to the other party to be an auctioneer or broker who is usually employed in selling property as the agent for others. Even when he discloses the name of his principal, if he signs a written contract in his own name merely, which contract does not on its face show that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby." In the same case in the Supreme Court (17 Wend., 335) Ch. J. NELSON said: "Honest dealing requires the auctioneer to disclose in his catalogue or otherwise the names of his principals, if he does not intend to take their places, in respect to the purchasers; otherwise he would be enabled to speculate upon them by thrusting between him and them an irresponsible owner in every case of an uprofitable sale."

It is very obvious that this case has no bearing upon the question whether it is to be presumed that an express company was not the real owner of a bill of exchange presented for payment to the drawees, when the fact that they were collecting the bill as agents merely was not expressly disclosed.

It is suggested that it does not appear that the plaintiffs knew at the time the draft was presented for payment that the presentation was by, and the payment made to, the express company. This objection, I think, ought not to be considered in this court, as it was not taken on the trial in any such form as to attract the attention of the referee to the point,

and the cause was tried, in fact, upon the assumption that the plaintiffs knew that the draft was presented and the money was received by the express company. The only point upon which the plaintiffs claimed the right to recover, and upon which they did recover, was, that the fact was not disclosed that the money was collected and received by the defendant as the mere agent of another. The objection made on the trial to reading in evidence the eleventh clause of the stipulation does not raise the point. The objection was that the evidence was irrelevant and immaterial, unless the plaintiffs had notice of "the fact therein stated" at the time the draft was paid. Several distinct facts were stated in the stipulation, and to which one the objection was intended to apply is not very apparent. The referee admitted the evidence, and it is clear he did not understand the objection to be pointed to the question whether the plaintiffs knew or not at the time that the draft was presented by the express company, but obviously to the point upon which he decided the case, that they were not advised at the time that the defendant was acting merely as a collecting agent. It is to be observed, also, that no such point was argued before us; and we are not called upon to suggest points not fairly made on the trial, unless it can be distinctly seen that the difficulty could not be obviated by evidence. In this case, if the points had been raised on the trial in such manner as to attract attention, it very likely might have been shown that the plaintiffs knew they were dealing with the express company.

I am of opinion that the judgment below was erroneous, and that a new trial should be granted, with costs to abide the event.

All concur with EARL, C., for affirmance, except REYNOLDS, C., dissenting.

Judgment affirmed.