Daniels, J.
No special attention will be required for the disposition of the appeal from the order vacating and resettling the interlocutory judgment. For as that was first entered broader than the' court designed it should be, it was clearly within its province to vacate and correct it as it" did, particularly as its action was so near the time of the entry of the judgment itself. As to that appeal, it has no meritorious grounds for its support, and the order from which it has been taken should be affirmed.
The more important controversy in the case depends upon the sufficiency of the complaint itself, and the disposition which should be made of the objection that the action is defective for want of additional parties. It was brought to vacate the purchase of bonds and stock, of the *723 New York, West Shore and Buffalo Railway Company. The agreement for the purchases was made in the early part of December, 1882, and the first purchase which was made included bonds amounting to the par value of $100,000 and two hundred shares of the stock of the railway company. The second was made in the spring of 1883 for a like amount of bonds and stock of the company. As the foundation of the plaintiff’s action, it has been alleged in the complaint that he was induced to subscribe the agreement for these purchases and to take and pay for the stock and the bonds by fraudulent representations made by the defendants to him concerning the property, condition and solvency of the railway company, and for that reason claiming that the contract should be rescinded, the bonds and stock returned and the moneys paid by him as their purchase price, less the amount afterwards received upon interest coupons, should be returned to him. These allegations are all admitted to be true by the demurrer, and so are those affirming that the plaintiff in ignorance of the condition and insolvency of the railroad company and the state of its property, relied and acted upon his belief in the truth of these representations. And, ordinarily, that would be sufficient to maintain such an action, inasmuch as full justice could be done to the defendants by deducting the amount received upon the coupons from the sums of money the plaintiff would be entitled to receive from the rescission of the sales. Allerton v. Allerton, 50 N. Y., 670; Neblett v. McFarland, 92 U. S., 101.
And actions for relief upon allegations of this description are so common that other authorities than the cases last cited need not be referred to in support of the right of the court to entertain them. The difficulty in the case does not arise out of the insufficiency of these allegations, but it is presented by the manner in which the business itself was transacted.
The plaintiff has nowhere averred in his complaint that the defendants either were the principals in the sales, or acted or represented themselves as acting in such a manner, as to lead him to believe that they were contracting with him in their own behalf. If that had been done, or the complaint by its fair construction would support the conclusion that they acted in the sales as principals, although in fact no more than agents, then they would be responsible for all the consequences, and the suit might well be maintained against them personally. For, as was stated by the chancellor in Mills v. Hunt (20 Wend., 431), the law must be considered as settled that a vendor, or purchaser, dealing in his own name, without disclosing the name of his principal, is personally bound by his contract. And *724 this role was followed in Holt v. Ross (54 N. Y., 472). ¡But the complaint has failed to bring the plaintiff case within this legal role. His averments connecting the defendants with the transactions are that about the 1st of December, 1882, “his attention was called to the fact that the said defendants were about forming a syndicate for the purchase of a portion of an issue- of fifty millions of mortgage bonds of a corporation called the New York, West Shore and Buffalo Railway Company.” And he then adds, that “the said defendants then and there proposed to the plaintiff that he should become the purchaser' of some of said mortgage bonds.” In this interview, the terms upon which the purchase could be made were disclosed, and they were stated to include “a commission of $1,000, to be paid by the plaintiff to the said defendants.” In the same interview, it is related that he was informed that an option would be given to him to make a further like purchase upon the terms set forth,” which also included “a commission of $1,000, to be paid by said plaintiff to said defendants.” The facts so averred that the purchases were to be made by the intervention of a syndicate, and that the defendants were to receive a commission upon the sales made by them, were an indication that they weie acting or proposed to act in the transaction of the business as agents and not as principals. And it is further averred in the complaint, that in the purchase of the two parcels of bonds and stock, that this commission of $1,000 for "each of the purchases was paid to the defendants by the plaintiff.
But the fact that the defendants were acting as the agents of a corporation called the Construction Company in the sale of the bonds and stock does not exclusively depend upon the effect of these averments, for it is further stated in the complaint that an agreement was produced, made between the construction company and the defendants, and the persons who should subscribe it as purchasers, and that the plaintiff subscribed this agreement. A copy of it is annexed to and made a part of the complaint, and from this copy it appears that the bonds and the stock were to be sold for the construction company through the intervention , of the defendants, and that the proceeds of the sales, after deducting a commission, also to be reserved by them therefrom, were to be paid over to the construction company, to be applied to the construction of the railroad of the railway company, and to other specified expenditures. This agreement by the stipulations or covenants contained in it, relating to these and other subjects, very clearly indicate that the authority designed to be exercised under its provisions by the defendants, was that of an agency, and nothing beyond that. And this design has not only been disclosed by these pro vis *725 ions of the agreement, but was in its language clearly expressed, for in one of its recitals it was stated that: “And whereas, the firm of Winslow, Lanier & Company, the parties hereto of the second part, have been appointed the financial agents and transfer agents both of the said New York, West Shore and Buffalo Railway, and of the Cob.struction Company, and have agreed to act as such agents, and also to perform certain services on behalf of the said companies in connection with the syndicate subscription hereby made, and are to receive therefore a compensation to be paid to them by the said companies, as has been agreed, between them; and the said firm of Winslow, Lanier & Company, have also consented to act as the bankers for the syndicate subscriptions hereby made upon the terms of this agreement, it being understood that the said Winslow, Lanier & Company, are also to become themselves subscribers to the said syndicate, upon the terms hereof.”
And this very clearly defined the position of the defendants to be that of agents in the negotiation and sale of the bonds and the stock. It is true, that it is further alleged in the complaint, that the defendants had the exclusive right to purchase the bonds and stock mentioned in the syndicate agreement down to and including the 7th of Decembei, 1882, but it does not appear by any averment in the complaint, that they ever did purchase under that right. On the contrary, as the case is presented, in their negotiations and business with the plaintiff, they acted in their capacity of agents and not otherwise. That they intended so to act, and that the plaintiff understood that to be their design, quite clearly appears from the allegations of the complaint, and the stipulations and provisions contained in the agreement, which the plaintiff states was produced to, and subscribed by him. It is true that the plaintiff alleges in his complaint, that his health was somewhat impaired at the time of these transactions and in consequence of that circumstance he was not able “to properly or thoroughly understand the contents thereof, though he realized that it was an agreement that gave great power and authority to the said defendants. ”
But it is nowhere alleged in the complaint that he failed to discover from the agreement when he perused it and before he subscribed it, that the defendants were acting in the sale of the bonds and stock as the agents of the Construction Company. And from that omission it is to be inferred that while his health was impaired, as he states it to have been, that he was still able to, and did, discover from the agreement the true relations of the defendants to this business. This inference is strengthened by the fact that no special amount of attention or mental exertion would *726 be necessary to discover this relation of the defendants to the business, for it not only' plainly appeared from the stipulations contained in the agreement, but was clearly stated in the language employed in that part of its recitals which have been already transcribed. What the plaintiff designed to disclose by the reference made to the condition of his health was to excuse himself on that account for not having investigated the condition of the bonds and stock, or of the railway company, or its title to the property represented to have been acquired by it and owned by it. And for that reason it is stated that he informed the defendants that if he became the purchaser of the stock and bonds, “he would do so relying solely and exclusively on the recommendations and assurances of the said defendants and their statements• to him in that behalf.” And, so far, according to the complaint, he did rely upon what was represented by them, and become the purchaser of the bonds and stock “because of his confidence in their statements, as he had not then sufficient physical strength or ability to make the necessary inquiries for himself.” But as these averments were made they wholly fail to maintain the conclusion that the plaintiff did not become fully aware from his examination of the syndicate agreement, of the fact that the defendants were acting in the sales as the agents of the Construction Company. And if he did not acquire .that knowledge, the fact should have been so stated by him, for it was an essential circumstance standing at the foundation of his right to maintain his action against them, for the rescission of the sales through which he became the purchaser of the bonds and stock. It was one of the facts forming a part of his right of action, if it existed at all, and should have been averred in the complaint in some manner indicating the truth to be that he had dealt with them as principals instead of agents, as their relation to the business is disclosed by the complaint and the recitals and stipulations of the agreement. It is true that the agreement is intricate and obscure in some of its provisions, but that is not the case as to the disclosure of the fact that the defendants were acting as agents and not as principals in the sales made to the plaintiff and others coming in under the syndicate agreement. And as such agents an action to rescind the sales and recover back the purchase price paid for the bonds and the stock cannot be maintained against them, for it has not been averred in the complaint, either directly or indirectly, that the moneys paid by the plaintiff as the purchase price remained in the hands or under the control of the defendants.
If it did, that was one of the facts required to present a cause of action for the rescissions of the sales in the plaintiff’s *727 favor, and it should have been alleged in the complaint, but that was not done, and as the case has been set forth, the presumption is warranted that the money did not remain in the defendant’s hands at the time this action was commenced. For by the agreement wrhich was made, and under which these parties acted, the Construction Company was entitled to the moneys received from time to time as it should become available, to be used by it in defraying the expenses of the construction of the railway and making payment of other charges. The plaintiff after he had made his purchases and in the latter part of January, 1884, discovered the fact that he had been imposed upon by fraudulent representations, and in that manner induced to make these purchases. And to preserve and maintain his rights he served a notice in writing upon the defendants, electing to rescind such purchases, but this action was not commenced by him for this purpose, until October, 1884, after the Construction Company had become insolvent, and a receiver of its property is stated to have been appointed. These facts in the absence of any averment to the contrary in the complaint, very cogently support the presumption that the moneys received from the plaintiff had passed out of the hands of the defendants under the agreement with the Construction Company, and that they were no longer available to them for the purposes of this action. The disposition which they had made of the money was that for which it had passed into their hands, and it could not be reached or recalled by a simple action against them, but the receiver of the company should have been made a party to the action, and that relief demanded against him.
It is true that the defendants received the two items of commissions of $1,000 each, which may be assumed to have remained in their hands at the time when the suit was brought, and to that extent they would personally be accountable to the plaintiff. But that liability is no more than an incident of the right through the intervention of the action, to rescind the agreement and the purchases made under it. And as long as the action for the rescission cannot be maintained as it has now been prosecuted, this incidental right must necessarily fail with the principal object of the suit to which it is in this manner connected.
As the complaint has been framed the case of McMillan v. Arthur (98 N. Y., 167), although differing in its facts, is an authority against the plaintiff. And so is the general rule mentioned in Williams v. Bankhead (19 Wall, 563) that, “ where a person will be directly affected by a decree, he is an indispensable party, unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. ” For if a judgment could be re *728 covered in the plaintiff’s favor, the right would necessarily arise on behalf of the defendants to call upon the Construction Company or its receiver for the return of this money.
Upon the facts which have been stated in the complaint, the plaintiff by some additions made to it, will be entitled to maintain his action against the defendants for the recovery of the damages sustained by him through the purchases he was induced to make by their misrepresentations of the solvency and condition of the railway company. But as the complaint has been framed it was not designed to include that right of action. Neither is it any part of the relief which in their demand for judgment the plaintiffs have asked for. Edson v. Girvan, 29 Hun, 422; Swart v. Boughton, 35 id., 281.
As the case is made to appear by the complaint, the right of action relied upon had not been maintained, and the judgment from which the appeal has been taken should be reversed and a judgment entered sustaining the demurrer with costs of this and the appeal from the order, to abide the event of the action, and with liberty to the plaintiff to amend within twenty days on payment of the costs of the demurrer.
Brady, J., concurs._