### KNEELAND et al. v. COATSWORTH.

##### (Superior Court of Buffalo, Special Term.   March, 1890.)

**1. PRINCIPAL AND AGENT—PERSONAL LIABILITY OF AGENT ON CONTRACT WITH HIM.**
    A person managing property as agent, who, without intimating that he is acting as such, orders repairs to be made by a contractor who does not know of his relation to the property, is personally liable therefor.[1]

**2. SAME—KNOWLEDGE OF AGENCY—EVIDENCE.**
    The fact that the contractor has previously repaired the property, at the agent's request, and was paid therefor by checks drawn by the agent in the owner's name, is not notice of the agency.[1]

Action by Elisha Y. Kneeland and others against William T. Coatsworth, for material furnished and work done by plaintiffs on an elevator, under contract with defendant. Defendant claims that he was acting only as agent of his mother, Mrs. Electa Coatsworth, who owned the elevator.

*Geo. B. Webster*, for plaintiffs.   *Spencer Clinton*, for defendant.

BECKWITH, C. J.   The decision of this case has depended upon the determination I should make of the question of fact presented by the evidence, namely, whether the defendant or the owner of the elevator was the person with whom the plaintiffs contracted. The testimony on the part of the plaintiffs is to the effect that on the 9th day of January, 1889, the defendant, being then, to the knowledge of the plaintiffs, in charge of the Coatsworth elevator, in this city, came to the plaintiffs, at their place of business, and requested them to replace some sheathing of corrugated iron that in a high wind had been blown off the side of the elevator; that the plaintiffs on such request replaced the iron; that at the end of about a week thereafter Mr. Kneeland, one of the plaintiffs, presented their bill to the defendant at the elevator, and asked payment; that the foreman and a brother of the defendant claimed that the plaintiffs' men had not worked at the elevator on one of the days charged in the bill, but Mr. Kneeland claimed that they had worked on that day; that

---

[1] See note at end of case.

Kneeland said he had county taxes to pay, and was in need of the money, and thereupon the defendant said he also had his taxes to pay, and that the plaintiffs should let the bill lie over for a while; that the plaintiffs did let the bill lie over till the month of February; that Kneeland then presented the account to the defendant at his residence; that there he and the defendant had hard words, the defendant claiming that the plaintiffs had charged for a larger quantity of new iron than was put on the elevator, but offering to pay one-half the amount of the bill if the plaintiffs would receipt it in full. The testimony further shows that when the defendant came to the plaintiffs' shop, and ordered the work to be done, nothing was said upon the subject whether he was ordering the work to be done for himself or for another person. He simply ordered the work to be done immediately. In fact, as is shown by the evidence, the elevator belonged to Mrs. Electa Coatsworth, the defendant's mother. There was evidence showing that originally, in 1887, the plaintiffs had put the siding of iron on the elevator under a written contract with Thomas Coatsworth, the father of the defendant, although Electa Coatsworth, in fact, was the owner. It does not appear that the contract disclosed or that the plaintiffs knew that Electa Coatsworth was the owner of the property. Thomas Coatsworth in his life-time had charge of the elevator, and after his decease, in December, 1887, the defendant, William T. Coatsworth, had the management of it. It further appeared in evidence that the work done under the written contract with Thomas Coatsworth was paid for by checks signed "ELECTA COATSWORTH, by THOMAS COATSWORTH," and perhaps one or two signed, "ELECTA COATSWORTH;" that after the death of Thomas Coatsworth, and previous to the performance of the work in question, the plaintiffs had done considerable other work on the elevator, which was paid for by checks signed "ELECTA COATSWORTH, by W. T. C." On cross-examination the plaintiff Rogers testified that at the time the order was given by the defendant for the work in question, he did not know who owned the elevator. "I presume Mr. Thomas Coatsworth was the owner. *Question.* Did you know that after his death it was owned by Mrs. Coatsworth? *Answer.* I presumed so; I did not know." This is all the testimony drawn from the plaintiffs or any of the witnesses upon the direct point of inquiry as to knowledge on their part of the ownership of the elevator. It appears that the plaintiffs, in form, charged the work to the Coatsworth elevator, and so rendered their bill. There was no testimony of witnesses, and the plaintiffs knew that Thomas Coatsworth in his life-time was not the owner of the elevator. . Previous to Thomas Coatsworth's death, it appears that whatever business transactions the plaintiffs had about work on the elevator were with Thomas Coatsworth, and, after his death, with William T. Coatsworth, the defendant. Although there was no direct proof that the plaintiffs had knowledge of who owned the elevator, yet the defendant's counsel claims that from the circumstances, from the course of business, particularly the payments by the checks of Electa Coatsworth, and the charging of their work by the plaintiffs to the Coatsworth elevator, it ought to be found that the plaintiffs knew that Electa Coatsworth was the owner, and that they knew that they were dealing with her, and took their orders from the defendant as her agent. The plaintiff Rogers testified that he presumed Thomas Coatsworth owned the elevator, and that upon his death he "presumed" Mrs. Coatsworth became owner; he did not know. With respect to this testimony, it may be observed that she might have become owner in some sense, and at the same time, William T. Coatsworth might be thought to have acquired some interest. A witness led upon cross-examination to admit presumption in his mind as to ownership has scarcely altered the effect of testimony that he did not know. Payments by the checks of Electa Coatsworth could not necessarily convey knowledge that she was the exclusive owner and the real principal with whom the plaintiffs were dealing. There

is no essential connection in thought between the acts of the payment for the repairs on the building by the checks of an individual and the fact of ownership. It is not infrequent that moneys are deposited in the name of one of several parties, and interest and payment made by the checks of a person not in interest. Her checks were not a notice conclusive on the plaintiffs that she was the owner, and Thomas Coatsworth and William T. Coatsworth but managers. The checks were not knowledge. With any knowledge the evidence shows the plaintiffs were possessed of, they could not have safely charged the work to Electra Coatsworth; that is to say, parties performing work could not safely charge as principal a person whose check they happen to receive, without any explanation in payment. The charge to the elevator, though it might indicate that the plaintiffs fancied the defendant was not the owner, is not inconsistent with their assertion of a claim against the defendant. *Cobb* v. *Knapp*, 71 N. Y. 353; *Coleman* v. *Bank*, 53 N. Y. 388.

The law requires that, if the defendant did not wish to incur any personal liability when he ordered the work, he should have revealed his principal, and ordered the work on her account. Plaintiffs were not bound to institute any investigation to make sure who they were working for. Besides, the plaintiffs might have very reasonably supposed that the defendant, as heir of Thomas Coatsworth, had some interest in the elevator. The contract which the plaintiffs, in 1887, entered into with Thomas Coatsworth, personally, for covering the elevator with iron, no reference being made to Electa Coatsworth or to the ownership of the elevator, would very naturally make them think that he was the owner, and that upon his decease his son, the defendant, had become the owner or acquired an interest in that property. So it seems to me that the defendant fails to show that when he ordered the plaintiffs to do the work on the elevator they knew he was representing somebody else, and fails to turn away the force of the testimony that the plaintiffs contracted with him. The undisputed testimony in the case shows that the defendant did not in any manner intimate to the plaintiffs that he was only acting as agent when he ordered the work. To escape liability, he must have done that, or show that the plaintiffs had knowledge. In *Cobb* v. *Knapp*, 71 N. Y. 352, Chief Judge CHURCH says; "It is not sufficient that the seller may have the means of ascertaining the name of the principal. If so, the neglect to inquire might be deemed sufficient. He must have actual knowledge. There is no hardship in the rule of liability against agents. They always have it in their own power to relieve themselves, and, when they do not, it must be presumed that they intend to be liable." To the same effect are the cases of *Newman* v. *Greeff*, 101 N. Y. 663, 5 N. E. Rep. 335; *Holt* v. *Ross*, 54 N. Y. 475. That the defendant, when Kneeland presented the bill for payment, did not deny his personal liability, and wanted the bill "laid over a while," and when it was presented a second time offered to pay one-half in discharge, are facts which are evidence for consideration. *Weidner* v. *Hoggett*, 1 C. P. Div. 533, 18 Moak, Eng. R. 174.

But while the language of the defendant used when the bill was presented is competent evidence, I do not put quite so much stress upon the form of the words as the plaintiffs' counsel seems to do. When the plaintiffs say we presented the bill to him, and he wanted it laid over till after he had paid his taxes, and on a second presentment he claimed too much iron was charged, and he offered to pay one-half the account, although the form of his language may be pointed to as not disputing, but apparently admitting, his personal liability, still it must be noticed that his presenting himself in the first person was entirely consistent with his position as an agent, if the plaintiffs understood all through the transactions that he was speaking and acting as an agent. It is not very improbable that the defendants believed all the time that the plaintiffs understood he was acting as an agent, and was contracting for his principal; but that will not avail him anything, (*Weidner* v. *Hoggett*,

*supra*,) the question being, who did the plaintiffs contract with according to the evidence. In form, the contract was with the defendant, and there is no proof that the plaintiffs knew he was not acting in a matter in which he had a personal interest. Whatever surmises might have been produced in the minds of the plaintiffs that there were other parties who were interested in the elevator, yet the proofs fail to disclose that the plaintiffs had knowledge that the elevator was the property of another person, and that the defendant ordered the work as a mere agent. Upon these views I have found for the plaintiffs.

### NOTE.

PRINCIPAL AND AGENT—AGENT'S LIABILITY TO THIRD PERSONS. An agent who purchases goods or signs a contract without disclosing the name of his principal is personally liable. Bridges v. Bidwell, (Neb.) 29 N. W. Rep. 302; Ye Seng Co. v. Corbitt, 9 Fed. Rep. 423. So is one who assumes to act as agent for another without authority. Terwilliger v. Murphy, (Ind.) 3 N. E. Rep. 404; Skaaraas v. Finnegan, (Minn.) 19 N. W. Rep. 729. One who sells property to another who acts as agent for an undisclosed principal may sue both agent and principal separately therefor, but a judgment against one is a bar to an action against the other. Weil v. Raymond, (Mass.) 7 N. E. Rep. 860. An agent who signs a bill of exchange in his own name, disclosing no principal, is alone liable thereon. Cragin v. Lovell, 3 Sup. Ct. Rep. 132. Parol evidence cannot be received for the purpose of charging the undisclosed principal, as this would vary the written instrument. Luna v. Mohr, (N. M.) 1 Pac. Rep. 860. See, also, Heffron v. Pollard, (Tex.) 11 S. W. Rep. 165. But in Boland v. Fuel Co., 34 Fed. Rep. 523, it is said, in an action on a contract of affreightment, that "the right to show by parol evidence that the defendant was an undisclosed principal is not doubtful." A general agent is not personally liable on a contract made by a sub-agent on behalf of a common principal. Blewitt v. Olin, 3 N. Y. Supp. 936.

Agents are liable on their personal warranty of a machine belonging to their principal, and sold to one who relies on such warranty. Rondquist v. Higham, (Minn.) 24 N. W. Rep. 190; and for false representations as to the character and condition of the principal's property, on which a purchaser relies, Clark v. Lovering, (Minn.) 33 N. W. Rep. 776; Moore v. Shields, (Ind.) 23 N. E. Rep. 89. A contract signed by one who affixes to his name the word "agent" is, standing alone, *prima facie* his own contract, but is open to proof that it was intended to bind the principal, and not himself. Deering v. Thom, (Minn.) 12 N. W. Rep. 350. See, also, Murphy v. Helmrich, (Cal.) 4 Pac. Rep. 958; and it must be shown that the other party knew at the time for whom he was acting, Stevenson v. Polk, (Iowa,) 32 N. W. Rep. 341. See, also, note, Id. Although a corporation's note is made payable to and is indorsed by its agent, if it appear that the corporation, and not the agent, was intended to be bound by the indorsement, the corporation alone is liable. Bank v. Colliery Co., 3 N. Y. Supp. 771. An agent may contract so as to be held personally liable, though the other party knew that he was acting as agent simply. Bell v. Teague, (Ala.) 3 South. Rep. 861. But see Lehman v. Feld, 37 Fed. Rep. 852; Hewes v. Andrews, (Colo.) 20 Pac. Rep. 338. One who has purchased property from an agent, to whom he has paid the price, cannot, on rescission of the contract, recover the price from the agent, where the latter has remitted it to the principal. Bailey v. Cornell, (Mich.) 33 N. W. Rep. 50. An agent who has complete control of a house belonging to an absent principal, and who lets the house in a dangerous condition, promising at the time to repair it, is responsible to a third person for injuries caused by want of such repair. Baird v. Shipman, (Ill.) 23 N. E. Rep. 384. See, also, as to the general liability of agents to third persons, Steam-Ship Co. v. Harbison, 16 Fed. Rep. 688, and note.