BERRY LUCAS
v.
ARCHIE WALLACE.

*Sales—Auction—Contract—Lottery.*

1. An agreement in advance of a sale of stock to present a cow to the

Lucas v. Wallace.

best bidder, does not constitute a given transaction a lottery and against public policy.

2. As soon as property is knocked down to the bidder at an auction, the title passes to him subject to a lien thereon in favor of the seller for the amount of the bid.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge. presiding.

Messrs. G. W. THOMPSON and C. E. CLEVELAND, for appellant.

Mr. F. F: COOKE, for appellee.

LACEY, P. J.   This was a suit brought by appellee against appellant to recover the value of a cow which appellant had agreed to give to appellee for the consideration hereafter mentioned.   The suit was instituted before a police magistrate and afterward appealed to the Circuit Court, where the appellee recovered for the value of the cow, found by the jury to be $30.

The appellant advertised for a public sale of full bred and high grade Polled Angus cattle and other stock, to take place on his farm one mile west of Abingdon, Knox County, Ill. In the advertisement the appellant says : " In order to make things more interesting I propose to make the best bidder a present of a pure bred and recorded short-horn cow.   Come and see who gets the present."

Prior to the opening of the sale, the auctioneer stated that the man who bought the most stock and paid for it, would be regarded as the highest bidder.   At the sale the appellee purchased the greatest amount of stock in value and paid for it, provided a certain cow which he bid off at the sale for $27, but afterward sold to Capps, is included.   The facts in regard to that are about these :   As appears from the evidence, the appellee bid off the cow for $27.   Mr. Capps came to him fifteen or twenty minutes after the sale was over

and proposed to buy the cow of him, and, after some negotiation about the price, Capps purchased the cow for $2 over and above the price that she was bid off at by appellee, and agreed to pay the $27 to appellant or give his note to him in place of appellee. By agreement between Capps and appellee, Capps paid appellant for the cow and took her away. Now, the only question presented in this case is, whether, under these circumstances, the appellee bid off and paid for the most stock at this sale. It may be further stated that the further agreement between Capps and appellee was that the former should not claim the premium. We think clearly, under this state of facts, the appellee bid off and paid for the cow; that at a public auction as soon as the property is " knocked down " to the bidder, the title of the property passes to the bidder, subject, however, to a lien on the property in favor of the seller for the amount of the bid. The cow, then, as soon as she was " knocked down," became the property of appellee. Then how did he pay for her? He did so by procuring Capps to pay for her, for which he compensated Capps by letting him have the cow for $27, Capps paying him $2 to boot. It would make no difference whether Capps paid the cash or gave his note, so he satisfied appellant. The appellee, therefore, settled for the cow. The point that appellant's attorney makes, that the transaction was a lottery and against public policy, we do not think well taken. It was a fair premium offered so as to stimulate bidders, and not unfair or against public policy.

Judgment of the court below is therefore affirmed.

*Judgment affirmed.*