JAMES R. DE REMER, Respondent, *v.* WILLARD BROWN et al.,
Appellants.

1. PRINCIPAL AND AGENT — CONTRACT — UNDISCLOSED PRINCIPAL. Persons who contract in writing as principals for work and materials cannot evade liability by claiming or proving by parol that they acted for some undisclosed principal or syndicate to which they intended to assign the contract, where such fact was not mentioned therein nor made known to the parties with whom they contracted.

2. EVIDENCE — PAROL PROOF TO VARY CONTRACT. That the specifications for work contracted for by a firm use in some portions the word "company" and provide that a percentage shall be retained by it as a guaranty of the faithful completion of the work, does not create such an ambiguity as to render admissible parol proof that the firm acted for an undisclosed principal.

3. CONTRACT BY AGENT — NOTICE. The words "as agreed upon here," contained in a letter authorizing an agent to sign a contract for a ditch for irrigation purposes, do not impose upon the parties with whom he contracted the duty of ascertaining all that had been discussed between the agent and his principals or as to who were to be the responsible parties in the transaction, where the words related merely to the manner of building the ditch.

4. PERSONAL LIABILITY. An agent who contracts for work and materials in his own name, without disclosing his principal, makes himself personably liable therefor, although the other party to the contract may suppose that he is acting as agent and has means of ascertaining the principal, but remains without actual knowledge of the principal's identity.

*De Remer* v. *Brown*, 36 App. Div. 634, affirmed.

(Argued December 4, 1900; decided January 22, 1901.)

APPEAL from a judgment of the Supreme Court, entered in favor of plaintiff February 8, 1899, upon an order of the Appellate Division in the first judicial department, overruling defendants' exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for plaintiff upon a verdict directed at a Trial Term.

In September, 1890, the defendants, lawyers and residents of the city of New York, went to Denver, where they met Edwin H. Kellogg, a civil engineer. During the previous

year Kellogg had made a preliminary survey of lands in New Mexico which the defendants were desirous of acquiring for themselves or for others. An interview took place between the defendants and Kellogg in regard to such lands and a further survey of them, and when they left Denver it was with an understanding that they would notify him if they desired him to make a further survey. After their separation the defendants wrote Kellogg that they had made an arrangement as to the lands, and expressed a desire to have him proceed as early as possible to make the necessary survey, so as to put under contract for speedy completion a ditch for the irrigation of about five thousand acres of land for alfalfa. They also advised him to consult Mr. Slattery as to location and other matters, and notified him that drafts upon them for his expenses and other disbursements would be honored.

. As a result, Kellogg left Denver September 28, 1890, and began the suggested survey. It was completed in the early part of December, and on the thirteenth of that month, at the request of the defendants, he came to New York, where he remained until the twentieth. There was a voluminous correspondence between Kellogg and the defendants prior to the execution of the contract in suit. In a letter from Kellogg to the defendants, dated September 18, 1890, the former requested information from them as to the name of the company; if a corporation, under what law organized; to whom he was directly responsible; to whom he should report his operations, and whether they would have any other agent in New Mexico, and, if so, his status as to him. On September twenty-second the defendants replied to Kellogg's inquiry as to the name of the company, etc.; that he would regard himself as responsible to Brown & Wells only; that they would meet the financial wants of the organization, which was not, and for some time could not be, completed, and that they could not say whether they would have any other agent in New Mexico. They then discussed the question of his salary, and added that they could not reply to the last paragraph of his letter, as no organization had yet been made, and it would be

premature to announce his official appointment; that they did not consider it necessary to announce it to anybody, as nobody was concerned but themselves and Kellogg, and that what they had already said would give him authority to make purchases of the necessary material and to employ the necessary labor. On December twenty-seventh Kellogg again wrote, asking the defendants to give the corporation or association name to be used in the contracts and vouchers. To that the defendants replied : " We think, upon full consideration, that you had better make the contracts and vouchers in the name of Brown & Wells, and we can assign them to the Ditch Company as soon as we understand the legal requirements are in shape. When they are, the work can be done for the benefit of the Bell Ranch Ditch Company. * * * We understand that we have already given you authority to make the contracts for the building of the ditch, as agreed upon here ; but, so far as you may need such authority in writing, let this be sufficient."

In the following February the surveys and preparations had been sufficiently proceeded with to enable bids for the construction of the dam and canal to be called for, which was accordingly done. Different persons bid upon the work, and Kellogg, after examining the various bids, determined that James R. De Remer & Co. were the lowest bidders, and the contract was awarded to them. The agreement for the work was signed on or about the twenty-third of that month by De Remer & Co., and by Brown & Wells by Edwin H. Kellogg, agent. On the same day Kellogg telegraphed the defendants, " Ditch contract signed to-day. Copy sent you." Three days later one of the defendants wrote Kellogg : " I have looked over the contract and specifications for the canal, and have nothing whatever to add. So far as I can see it is perfect." When the contract was signed the plaintiff's firm inquired of Kellogg as to his authority to sign the name of the defendants. Thereupon he showed them the letter of January sixth, or a portion of it which related to his authority to make contracts for the defendants for constructing the dam

and ditch. ·The particular part upon which it is claimed that
the plaintiff's firm relied was : " We understand that we have
already given you authority to make the contracts for the
building of the ditch, as agreed upon here ; but, so far as you
may need such authority in writing, let this be sufficient."
The plaintiff, before the commencement of this action, acquired
all his partner's interest in the contract in suit and the money
due the firm for the work performed under it.

On the trial the plaintiff and Kellogg were both called and
testified as witnesses for the plaintiff. The plaintiff testified
that he knew nothing of any company, corporation or syndicate
that had anything whatever to do with the lands or the con-
struction of the ditch which his firm contracted to build. The
testimony of Kellogg was to the same effect. There was no
direct proof that the plaintiff had any knowledge whatever
that any corporation or person other than the defendants was
principal in the building of this dam and ditch. The proof
was, however, sufficient to justify the conclusion that Kellogg
knew or had reason to understand that this work was being
done for some inchoate corporation or syndicate which was
represented by the defendants. The trial court directed a
verdict for the plaintiff, which was evidently based upon the
theory that unless the plaintiff's firm knew that the defendants
were agents for some disclosed or undisclosed principal they
were liable upon the contract signed by them. It then held
that as there was no evidence to show that they possessed such
knowledge, but the proof was directly to the contrary, a ver-
dict should be directed for the plaintiff.

*David B. Hill* and *Byron Traver* for appellants. Parol
evidence was properly received by the trial court in aid of
defendants' claim of their agency. (*Field* v. *Munson*, 47 N.
Y. 221 ; Whart. on Ev. [3d ed.] § 956 ; *Babbett* v. *Young*,
51 Barb. 466 ; *A. C. Bank* v. *Leonard*, 40 Barb. 136 ; *New-
man* v. *Greeff*, 101 N. Y. 663 ; *Bentley* v. *Bellinger*, 4 T. & C.
71 ; *Eighmie* v. *Taylor*, 98 N. Y. 296 ; *Corse* v. *Peck*, 102
N. Y. 513 ; *Worrall* v. *Munn*, 5 N. Y. 229 ; *Nixon* v.

*Palmer,* 8 N. Y. 398; *Martin* v. *Farnsworth,* 49 N. Y. 555.)
The circumstances surrounding the execution of this contract
were such as should have put a prudent man, acting in good
faith, on inquiry as to whether defendants were agents or
principals in the transaction; and plaintiff was, therefore,
chargeable in law with such notice as his inquiry would have
developed. (*Edwards* v. *Dooley,* 120 N. Y. 540; *Cox* v.
*Pearce,* 112 N. Y. 637; *Wright* v. *Cabot,* 89 N. Y. 574;
*Baring* v. *Corrie,* 2 Barn. & Ald. 137; *Higgins* v. *Eagle-
ton,* 155 N. Y. 466; *Hanover Bank* v. *A. D. & T.
Co.,* 148 N. Y. 619; *Ladd* v. *Æ. Ins. Co.,* 147 N. Y. 478;
*Argersinger* v. *Macnaughton,* 114 N. Y. 535; *Craighead* v.
*Peterson,* 72 N. Y. 279.) Beyond the contract itself, which
was not signed by defendants personally, there is no fact in the
case from which an inference may justly be drawn that defend-
ants assumed, or intended to assume, personal liability, or to
adopt the contract made by Kellogg, their pretended agent, as
their personal obligation. (*Craighead* v. *Peterson,* 72 N. Y.
280; *Ritch* v. *Smith,* 82 N. Y. 627; *Bickford* v. *Menier,*
107 N. Y. 490; *Merritt* v. *Bissell,* 155 N. Y. 396; *Higgins*
v. *Eagleton,* 155 N. Y. 466.) The most favorable view for
the plaintiff that could have been taken of the whole case
required the submission to the jury of the question whether
plaintiff had been guilty of such carelessness in failing to prose-
cute any inquiry at all, as to preclude a recovery upon his
claim. (*Cheever* v. *P., S. & L. E. R. R. Co.,* 28 App. Div.
81; *Hanover Bank* v. *A. D. & T. Co.,* 148 N. Y. 619; *C.
Nat. Bank* v. *Diefendorf,* 123 N. Y. 191.)

*Thomas D. Adams* and *John J. Adams* for respondent.
The contract sued on was executed by the witness Kellogg, as
the agent for the defendants, in strict conformity with his
instructions received from them, and they are bound by it.
(*Marsh* v. *Gilbert,* 2 Hun, 60; *Westfield Bank* v. *Cornen,* 37
N. Y. 321; *N. R. Bank* v. *Aymar,* 3 Hill, 262; *Bickford*
v. *Menier,* 107 N. Y. 494.) If the defendants were acting as
agents, and not as principals, as they now contend, it was for

an undisclosed principal, and the name of such principal and the fact of the agency were wholly unknown to plaintiff at the time of the signing of the contract, and defendants are personally bound. (*Holt* v. *Ross*, 54 N. Y. 475 ; *Cobb* v. *Knapp*, 71 N. Y. 349 ; *Jemison* v. *C. S. Bank*, 44 Hun, 415 ; *Knapp* v. *Simon*, 96 N. Y. 288 ; *Canal Bank* v. *Bank of Albany*, 1 Hill, 294 ; *Munson* v. *S., G. & C. R. R. Co.*, 103 N. Y. 75.) Not only was the contract executed in strict accordance with the instructions received by appellants' agent, Kellogg, but his action in so executing it, and in making vouchers in their name as principals, was afterwards fully ratified and confirmed by the defendants, with full knowledge upon their part of the manner of the execution of the contract in question. (*Germania Bank* v. *Distler*, 4 Hun, 633 ; *Hill* v. *Miller*, 76 N. Y. 35 ; *Dabney* v. *Stevens*, 10 Abb. Pr. [N. S.] 48 ; *Gillis* v. *R. R. Co.*, 34 Minn. 301 ; 1 Lawson's Rights, Rem. & Pr. 79 ; *Ward* v. *Williams*, 26 Ill. 447 ; *Hamlin* v. *Sears*, 82 N. Y. 330 ; *Towle* v. *Stevenson*, 1 Johns. Cas. 110 ; *Armstrong* v. *Gilchrist*, 2 Johns. Cas. 424 ; *Cairnes* v. *Bleecker*, 12 Johns. 300 ; *Jervis* v *Hoyt*, 2 Hun, 641.) The contract having been made in the name of the defendants as principals, they were precluded from introducing parol evidence to alter or vary its terms so as to discharge themselves from liability thereon. (*Worrall* v. *Munn*, 5 N. Y. 229 ; *McDowell* v. *Simpson*, 27 Am. Dec. 344 ; *Pettis* v. *Bloomer*, 21 How. Pr. 318 ; *Stone* v. *Wood*, 7 Cow. 455 ; *Bank of Rochester* v. *Monteath*, 1 Den. 405 ; *Pumpelly* v. *Phelps*, 40 N. Y. 67 ; *Briggs* v. *Partridge*, 64 N. Y. 361 ; *Kiersted* v. *O. & A. R. R. Co.*, 69 N. Y. 345 ; *Squier* v. *Norris*, 1 Lans. 286 ; *Benham* v. *Emery*, 46 Hun, 160.)

MARTIN, J.   When the discussion of the various reasons assigned by the courts below for their action in this case is omitted, and our examination is confined to the only question before us, which is the correctness of the decision from which this appeal is taken, the case is a plain and simple one, and the questions involved are not difficult of solution.

The agreement which is the basis of this action, and upon which the plaintiff has recovered, was between the plaintiff's firm upon one hand, and the defendants' firm upon the other. The former thereby agreed to perform and furnish certain work and materials according to specifications which were a part of the contract, and the defendants agreed to pay for such work and materials the prices or sum mentioned therein. At the time of the trial there was due the plaintiff thereon the amount for which a verdict was directed. The contract was in writing, and was between J. R. De Remer & Co. as parties of the first part, and Willard Brown and Charles W. Wells, doing business under the firm name of Brown & Wells, as parties of the second part. It was signed on behalf of the plaintiff's firm by one of its members, and by the defendants Brown & Wells by Edwin H. Kellogg, their agent. That Kellogg was authorized by the defendants to make and sign this contract for them and in their name, there can be no doubt. Express authority to thus bind them was not only given him by their letter, but when the agreement was executed it was immediately sent to the defendants and examined by them, and they then expressly approved of it as "perfect." Thus, it is manifest that the contract was made in the name of the defendants, and signed for them at their request by their duly constituted agent. Therefore, in the further discussion of this case, it must be assumed that they were parties to the contract as principals and not as agents.

The contention of the appellants is that they were the agents for some undisclosed principal or syndicate, or for the promoters of the undertaking who were intending to form a corporation to build the ditch or canal, and, hence, they are not liable, although the contract was made in their names and with no knowledge upon the part of the plaintiff's firm of any principal other than the defendants. The language of the written agreement was not only plain and unambiguous as to who were the principals and who was to pay the plaintiff's firm for the labor and materials furnished, but the other proof in the case shows quite conclusively that the defendants

intended to become such principals. This is shown by their letter of January 6, 1891, not only by the positive direction therein to have the contracts made in their name, but also by the statement that when the company mentioned was in legal shape, the contract could be assigned to it. The defendants were lawyers and well knew that if they were agents for a company, no assignment to it would be required. Indeed, the company to which that letter referred was never in legal shape to take such assignment. Besides, any assignment to it, or any other principal unknown to the plaintiff's firm, could have in no way affected their rights. To now hold that the defendants can be relieved from the responsibility they thus plainly and intentionally assumed by claiming or proving by parol that they intended to transfer their contract to, or that they acted for, some undisclosed principal not mentioned in the agreement nor disclosed to them, would be at war with every established principle of the law of agency, as well as with the principles of equity and natural justice.

That an agent may contract in his own personal capacity and be thus bound to the persons with whom the contract is made, is elementary. It is competent for an agent, although fully authorized to bind his principal, to pledge his own personal responsibility instead. Such a personal undertaking is not necessarily inconsistent with his character as an agent, and when he has so bound himself he will be held liable. If the promise is in writing, its construction and effect are ordinarily questions of law to be determined by the court. In construing such a contract, the intent of the parties is to be ascertained from the language employed, unless there is some ambiguity in a material part of the contract, the explanation of which requires proof of the attendant facts and circumstances. In this case there is no ambiguity or uncertainty in the language employed, so far as it bears on the intent of the defendants to become principals in the contract made by them. That intent is disclosed by the plain language of the agreement, and is in entire harmony with every act of the parties. While, in some portions of the specifications the word " company " was used,

53

still, the use of that word created no ambiguity which would permit parol evidence to contradict the positive and clear terms of the contract, as to who were the contracting parties with the plaintiff's firm, or to contradict the provisions of the contract to the effect that the defendants were to pay for the work and material which were to be furnished by the plaintiff's firm. Therefore, the appellants' claim that because in the specifications it was provided that a percentage should be retained by the company as a guaranty of the faithful completion of the work, such an ambiguity was created as to who were the responsible parties to that agreement as enabled the defendants to show that the contract made by them in their own name and signed by their duly authorized agent, was the contract of some undisclosed principal, cannot be sustained.

It is also contended that the words " as agreed upon here," contained in the defendants' letter which conferred upon their agent authority to sign the contract, imposed upon the plaintiff's firm the duty of ascertaining all that had been previously discussed or considered between Kellogg and the defendants, and constituted constructive notice to the plaintiff's firm of all such matters. We think that contention cannot be upheld. Those words in no way relate to the question as to who were to be the responsible parties with whom the plaintiff's firm made their contract, but related merely to the manner of building the ditch. The sentence contained in the letter was, " We understand that we have already given you authority to make the contracts for the building of the ditch as agreed upon here." Plainly it was the building of the ditch that was referred to and qualified by the phrase " as agreed upon here," and it did not relate to the persons who were to be parties and liable to the plaintiff's firm for the work they performed. This is the natural and proper construction of the sentence. Moreover, it is obvious that at the time this letter was written, there had been no agreement between Kellogg and the defendants as to the making of that contract, or in whose name it was to be made, and, hence, there was no agreement upon that subject when Kellogg was in New York,

and the words under consideration could not have applied to that subject. The defendants, in their letter to Kellogg of January sixth, expressly stated that upon full consideration they had concluded that the contract would better be in the name of Brown & Wells. This was in answer to an inquiry by Kellogg as to the name of the party to be used in this identical contract, and was the first time that question had been determined. It is evident, both by construction and under the proof, that the use of those words did not and could not have related to the subject of the parties who were to become liable to the plaintiff's firm, and, therefore, the defendants' contention in this respect cannot be sustained.

A person, even though making an agreement for another, makes himself personally liable thereon if he contracts in his own name without disclosing his principal, although the other party to the contract may suppose that he is acting as agent. (*Mills* v. *Hunt*, 17 Wend. 333; *Newman* v. *Greeff*, 101 N. Y. 663; *Kernochan* v. *Murray*, 111 N. Y. 306; *Argersinger* v. *Macnaughton*, 114 N. Y. 535; *Welch* v. *Goodwin*, 123 Mass. 71; *Worthington* v. *Cowles*, 112 Mass. 30; *Blakely* v. *Bennecke*, 59 Mo. 193; *Eichbaum* v. *Irons*, 6 Watts & Serg. 67; *McClure* v. *Central Trust Co. of N. Y.*, 165 N. Y. 108; Mechem on Agency, § 555; Dunlap's Paley on Agency, 368.)

Nor is it sufficient to exonerate the agent from liability that the seller has means of ascertaining the name of the principal. He must have actual knowledge. (*Holt* v. *Ross*, 54 N. Y. 472, 475; *Cobb* v. *Knapp*, 71 N. Y. 348, 352.) In the *Holt* case Judge Earl said: "Knowledge in plaintiffs that defendant might have acted as agent was not enough, and it was not the duty of the plaintiffs to inquire, before paying, whether the defendant was acting as principal or agent. It was the duty of defendant, if it desired to be protected as agent, to have given notice of its agency." In *Cobb* v. *Knapp*, Church, Ch. J., said: "It is not sufficient that the seller may have the means of ascertaining the name of the principal. If so, the neglect to inquire might be deemed sufficient. He must have actual knowledge. There is no hardship in the rule of liabil-

ity against agents. They always have it in their own power to relieve themselves, and when they do not, it must be presumed that they intend to be liable."

When these principles are applied to the facts of this case, it becomes obvious that the defendants were bound by the contract in question as principals, were liable to the plaintiff for the amount due thereon, and that the court properly directed a judgment for the plaintiff.

With our view of the law applicable to this case, many, if not most, of the rulings upon the admission or rejection of evidence become unimportant, as they could in no way have affected the result. Therefore, we deem it unnecessary to specially consider any of the other questions presented by counsel in their briefs and upon the argument further than to remark that we have examined all the exceptions to which our attention has been called without finding any which would justify a reversal of the judgment of the court below.

The order and judgment should be affirmed, with costs.

PARKER, Ch. J., GRAY, BARTLETT, VANN, CULLEN and WERNER, JJ., concur.

Order and judgment affirmed.