MEYER v. REDMOND et al.

(Supreme Court, Appellate Division, Second Department. November 23, 1910.)

1. AUCTIONS AND AUCTIONEERS (§ 9*)—LIABILITY OF AUCTIONEER.

An auctioneer, pursuant to an advertisement for the sale of stock at public auction for account of whom it might concern, on specified terms, offered stock for sale without disclosing the owner. A bid was accepted and the stock was declared sold to the bidder, who paid the partial payment demanded, and offered to pay the balance at the time fixed in the advertisement, which was signed by the auctioneer as such. The purchase price was made payable to the auctioneer at his office. *Held*, to create a contract in which the auctioneer was the seller and the bidder the buyer, so that the auctioneer could not escape personal liability by showing that he disclosed to the bidder the owner of the stock on the day of sale when he tendered the partial payment called for.

[Ed. Note.—For other cases, see Auctions and Auctioneers, Cent. Dig. §§ 41–43; Dec. Dig. § 9.*]

2. PRINCIPAL AND AGENT (§ 146*)—LIABILITY OF AGENT.

Where a person, in fact an agent, undertakes to contract as principal, he becomes such, notwithstanding the other party may suspect that he is an agent and has means of ascertaining the name of the principal, but the knowledge of the agency must exist, and the party must contract as such.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 521–527; Dec. Dig. § 146.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

3. AUCTIONS AND AUCTIONEERS (§ 9*)—LIABILITY OF AUCTIONEER.

The occupation of auctioneer and the exercise of it in selling stock pursuant to an advertisement announcing a sale of stock at public auction in the auctioneer's salesroom, on specified terms requiring the payment of the price to him at his office, does not give notice that the auctioneer acts as agent and he will be bound as principal, unless at the time of sale he discloses the name of the principal.

[Ed. Note.—For other cases, see Auctions and Auctioneers, Cent. Dig. §§ 41–43; Dec. Dig. § 9.*]

4. AUCTIONS AND AUCTIONEERS (§ 9*)—CONTRACTS—PARTIES LIABLE.

A memorandum executed by an auctioneer selling stock without disclosing the name of the owner and accepting the partial payment called for in the advertisement for the auction, reciting "Sold at auction  *  *  * to [name of buyer] 40 shares  *  *  *  at 40,  *  *  *  received 10 per cent. on account, balance  *  *  *  payable before" a time specified, is a bill of sale showing that he personally sold the stock, and he cannot escape liability by showing that prior to the execution of the instrument he informed the buyer that a third person was the owner of the stock.

[Ed. Note.—For other cases, see Auctions and Auctioneers, Cent. Dig. §§ 41–43; Dec. Dig. § 9.*]

5. PRINCIPAL AND AGENT (§ 146*)—LIABILITY OF AGENT.

An agent may relieve himself from personal liability by disclosing his agency before closing the contract with the other party, but even after such disclosure the agent may contract so as to bind himself.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 146.*]

Appeal from Trial Term, Queens County.

Action by Charles G. Meyer against William F. Redmond and others, doing business under the firm name of Adrian H. Muller & Son. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

Henry A. Forster (Frederick P. Forster, on the brief), for appellants.

William H. Hamilton (Norman C. Conklin, on the brief), for respondent.

THOMAS, J.  The defendants, doing business under the name of Adrian H. Muller & Son, sold at auction stock, which was purchased by plaintiff, who sues for failure to deliver. The stock was advertised for sale at public auction, "for account of whom it may concern," and was knocked down at public bidding to plaintiff. The terms of sale were "10 per cent. to-day, and the balance before one o'clock to-morrow, payable to the auctioneers, at their office, No. 55 William St.," and the advertisement thereof is signed, "Adrian H. Muller & Son, Auctioneers." After the due payment of the 10 per cent. the defendants delivered to plaintiff a slip signed by them stating in effect a sale of the stock from the defendants to the plaintiff. The following day plaintiff tendered the balance, but defendants failed to deliver the stock. The defendants offered evidence, which was rejected, of the entry of the sale in the auction book, showing the real name of the seller, the refusal of such seller to deliver the stock, and

that the seller's name was disclosed to plaintiff on the day of sale, when he tendered the 10 per cent.

It must then be assumed, for the purposes of this discussion, that the defendants as auctioneers advertised and offered the stock for sale, knocked it down to the plaintiff, and stated to the purchaser the name of the seller before the memorandum was given. The entry of the sales in the auctioneer's book was properly rejected as the rights of the parties had been fixed by earlier acts, and the evidence of oral notice of the real seller was inadmissible, as the legal obligations and the identity of the contracting parties was determined by the knocking down of the stock to the plaintiff, confirmed, although that was unnecessary, by the delivery, subsequent to the rejected notice of the real seller, of the defendants' individual memorandum of sale. The auctioneer, pursuant to the advertisement, offered the stock, without disclosing the principal; the plaintiff bid—that is, offered to give a sum for the property—the auctioneer accepted it, and sold the property by striking off the property to him. Bowman v. McClenahan, 20 App. Div. 346, 348, 46 N. Y. Supp. 945. Now, what was the legal effect of this, irrespective of the statute of frauds, which is not here involved? The defendant asserts that the passing of title was conditioned upon the payment of the sum bid. It is immaterial whether the title passed at the time the goods were knocked down, with right of possession in the seller to protect his lien for the purchase money, as decided in Haggerty v. Palmer, 6 Johns. Ch. 437; Lucas v. Wallace, 42 Ill. App. 172; Jenness v. Wendell, 51 N. H. 63, 12 Am. Rep. 48; Clark v. Greeley, 62 N. H. 394, or whether its vesting in the plaintiff was conditional upon payment of the price. In this connection it may be stated briefly that the condition, in the absence of agreement, has not in cases of goods sold at auction been held to relate to the payment of money, but to something to be done to the property for the purpose of delivery, or to be done in respect to the ascertainment of the price (Jenness v. Wendell, supra; Clark v. Greeley, supra), or to the furnishing of the security for the purchase price when the goods are sold on credit (Matthews v. McElroy, 79 Mo. 202; Williams v. Connoway, 3 Houst. [Del.] 63; Mazque v. Caze, 18 La. Ann. 31; Morgan v. East, 126 Ind. 42, 25 N. E. 867, 9 L. R. A. 558), where a note without security was to be given. While such discussion is unimportant for this decision, it may be doubted whether there is sufficient reason for departing in auction sales from the usual rule, that when personal property is by agreement deliverable upon payment of the price, the title does not pass until payment made. Empire State Type Founding Co. v. Grant, 114 N. Y. 40, 21 N. E. 40; Schryer v. Fenton, 15 App. Div. 158, 44 N. Y. Supp. 203; Hammett v. Linneman, 48 N. Y. 399. If there is no express stipulation as to concurrent delivery and payment, the intention is to be found from the acts and circumstances. Empire State Type Founding Co. v. Grant, supra. In the case at bar the very terms of sale, and all the surrounding circumstances, show that the sale was practically for cash, and that delivery and final payment were to be concurrent. However this may be, when the stock was

knocked down, a contract was made in which the defendants were the sellers and the plaintiff the buyer. If a person, in fact an agent, undertakes to contract as principal, he becomes such, notwithstanding the other party may suspect that he is an agent, and has means of ascertaining the name of the principal. The knowledge of the agency must exist, and that the party contracts as such. De Remer v. Brown, 165 N. Y. 410, 59 N. E. 129. There is no evidence that the defendants as agents offered the stock for sale and knocked it down to the plaintiff, or that plaintiff had notice and knowledge of such agency. Their occupation and its immediate exercise at the time did not give the plaintiff such knowledge. Mills v. Hunt, 20 Wend. 431. In that case it was decided that an auctioneer in fact acting as agent is bound as principal, unless at the time of sale he disclose the name of his principal; that his general employment is not per se notice that he acts as agent, nor is it material that he is known to the other party to be an auctioneer, or broker, who is usually employed in selling property as the agent of others, and that even if he discloses the name of his principal, if he signs a written contract in his own name merely, which does not upon its face show that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby. But in De Remer v. Brown, supra, the court indicates that knowledge by a party that the other party is acting as agent will exonerate him as principal, and cites Holt v. Ross, 54 N. Y. 474, 475, 13 Am. Rep. 615; Cobb v. Knapp, 71 N. Y. 348, 352, 27 Am. Rep. 51. But the vocation does not furnish the knowledge. In Holt v. Ross, supra, an express company was regarded as a principal in presenting for payment a draft with the payee's name forged thereon, although its general business was to act for others; and in the dissenting opinion Mills v. Hunt is cited with approval, and the language of Chief Justice Nelson in the same case in the Supreme Court (17 Wend. 333) is quoted. "The defendants are to be regarded as the owners of all the goods sold to the plaintiff, for the purpose of deciding the question stated. They so held themselves out by the catalogues, and nothing transpired at the sale varying the legal effect of such conduct. Honest dealing requires the auctioneer to disclose in his catalogue, or otherwise, the names of his principals, if he does not intend to take their places in respect to the purchasers; otherwise, he would be enabled to speculate upon them, by thrusting between him and them an irresponsible owner in every case of an unprofitable sale. This, however, is a point not to be discussed; the principle has been so long settled, and is so frequently applied in the dealings of mankind, as to be familiar to every lawyer." The defendants as agents did not offer the stock. They advertised an auction sale at the "Exchange Sales Room," and signed the advertisement as auctioneers, and made the purchase price payable to the "auctioneers at their office," and they sold accordingly. In other words, they (auctioneers) sold as such. This general fact the plaintiff knew, but as said in Baltzen v. Nicolay, 53 N. Y. 470, "nor does the fact that the agent is an auctioneer, and that the contract arises upon a sale by him as such, withdraw it from the operation of the rule" that the "agent who makes a contract for an undisclosed princi-

pal is personally bound by it." If, then, the defendants in offering the property for sale were acting as to the plaintiff as principals, what was the logical consequence? The offer for sale, the plaintiff's bid, the acceptance thereof by the defendants by declaring the property sold to them, that is knocking the property down to them, constituted a contract and gave the plaintiff a vested right that no subsequent acts of the defendants could without the assent of the plaintiff undo. It is immaterial whether title passed absolutely or conditionally. The parties were bound, the one to deliver and the other to pay. The statute of frauds might, if invoked, prevent enforcement of rights, but the parties to the contract had become fixed. But at this period the defendants claim later to have advised the plaintiff that some third person was the real vendor. The rejection of such evidence was not error. Such advice could not release the already obligated defendants and substitute for them another person as seller. The defendants cannot escape a fixed liability by disclaiming it and pointing to another as obligated to discharge it. Burnham v. Eyre, 123 App. Div. 777, 108 N. Y. Supp. 452; De Remer v. Brown, 165 N. Y. 410, 417, 59 N. E. 129. In Cobb v. Knapp, 71 N. Y. 353, 27 Am. Rep. 51, it is said:

"The subsequent disclosure of the principals by the agent, and the commencement of an action against them is not conclusive of an election to hold them responsible only. [Raymond v. Crown & Eagle Mills] 2 Metc. [Mass.] 319, supra; 10 Queen's Bench [L. R.] 57. In the recent case of Beymer v. Bonsall, 79 Pa. 298, it was held that neither the agent nor principal in such a case would be discharged short of satisfaction."

But the defendants, the sellers by the oral contract, later embodied their contract in writing. They accepted the partial payment of 10 per cent. and thereupon gave him a memorandum:

Sold at auction this day to Chas. G. Meyer 40 shrs The Lake Charles
Rice Milling Co. of Louisiana at 40............................... 1600
Received 10 per cent. on account.................................. 160
                                           ————
    Balance .......................................................... 1440
Payable before one o'clock to-morrow Thursday.
                                Adrian H. Muller & Son, per R.

This is a bill of sale showing that the defendants personally had sold the stock (Hargraves Mills v. Gordon, 137 App. Div. 695, 698, 122 N. Y. Supp. 245; Bibb v. Allen, 149 U. S. 481, 498, 13 Sup. Ct. 950, 37 L. Ed. 819), and accords fully with their previous personal obligations. There is no attempt to stipulate that a third person is the seller, or that the defendants are acting as agents. Assuming that they disclosed the real seller, does this instrument bind them? The rule is stated that "Even where he" (the agent) "discloses the name of his principal, if he signs a written contract in his own name merely, which contract does not upon its face show that he was acting as the agent of another, * * * he will be personally bound thereby." Mills v. Hunt, 20 Wend. 434; Bassett v. Perkins, 65 Misc. Rep. 103, 119 N. Y. Supp. 354, 358. The agent may, as defendants urge, relieve himself from personal liability by disclosing his agency before closing the contract. But even after such disclosure the agent

may contract so as to bind himself. But it is not necessary to determine whether this sale note, dissociated from the oral sale, binds the defendants. It is sufficient that the written instrument accords with the oral contract in presenting the defendants as sellers, and shows that whatever was said as to the real sellers, the parties did not modify the defendants' existing obligation. The case is unfortunate for the defendants. But the law that binds them has long existed, and they disregarded it at their peril. The damages were justified by the evidence.

The judgment and order should be affirmed, with costs.