INTERNATIONAL AGRICULTURAL CORPORATION, Appellant, *v.* JOHN H. CARPENTER, Respondent.

First Department, December 31, 1917.

Principal and agent — sale — purchase by agent for undisclosed principal — liability of agent where principal repudiates purchase — election to hold either principal or agent — warranty of authority by agent.

Where the defendant, acting for an undisclosed principal, as was indicated by his asking the plaintiff for brokerage commissions on a purchase of goods, made the purchase from the plaintiff in his own name, he is liable

on the contract when his principal, subsequently disclosed to the plaintiff, repudiated the purchase and refused to take the goods, if the plaintiff notified the defendant that it would expect him to fulfill his contract and made no election to hold the principal.

A contract with an agent for an undisclosed principal binds the agent although the third party knew that he was acting as an agent, unless there is a distinct understanding that the agent himself is not to be bound.

Although a principal was unknown at the time of the making of a contract, after the principal has been disclosed the third party has a right to elect either to hold the principal or the agent, and if he elects to hold the principal the agent will be discharged.

An election made in ignorance of the fact of the lack of an agent's authority is ineffectual to release the agent because not made with a full knowledge of all the facts upon which liability depends.

An agent warrants his authority from his principal.

LAUGHLIN and DOWLING, JJ., dissented.

APPEAL by the plaintiff, International Agricultural Corporation, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 13th day of April, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 11th day of April, 1917, denying plaintiff's motion for a new trial made upon the minutes.

*Joseph M. Hartfield* of counsel [*Vermont Hatch* with him on the brief], *White & Case*, attorneys, for the appellant.

*Martin W. Littleton* of counsel [*Owen N. Brown* with him on the brief], for the respondent.

SMITH, J.:

This action is to recover for breach of contract by the failure of the defendant to purchase 50,400 tons of phosphate rock, deliverable in installments of 700 tons per month, at two dollars and ninety cents per ton. The contract was no part of it oral, but is all contained in letters and telegrams between the parties. Negotiations started with a telegram from the defendant to the plaintiff for price on 5,000 tons annually on a six-year contract. In answer to that telegram the price was named at two dollars and ninety cents. The defendant sought to reduce that to two dollars and eighty cents with five per cent per ton brokerage to him. (This indicates that he was purchasing it for some third party unnamed.) This

was answered by an offer of two dollars and ninety cents with ten per cent brokerage. The plaintiff was acting for the Prairie Pebble Phosphate Company, and appears in this action as the assignee of that company. This was known by the defendant, as the correspondence was had with that company after the first offer. Upon June twenty-sixth the defendant telegraphed:

" Referring to your letter and telegram of seventeenth I accept offer at two dollars and ninety cents less ten cents brokerage for seven hundred tons monthly for seventy-two months."

Upon June twenty-sixth the defendant received from the Prairie Company a letter reciting this telegram and saying:

" This is entirely satisfactory to us and we now consider the sale closed. If you will furnish us with necessary data we will prepare the contract. We will have to know the name of the party with whom the contract is to be made, the date on which deliveries are to commence and the destination of the rock."

In answer to that the defendant wrote that the company was being organized and that he would give the name later, and afterwards did give the name as the Carolina Phosphate Company, Greenville, S. C., and directed the Prairie Company to draw the contracts in the name of that company. Upon July twenty-fifth the Prairie Phosphate Company wrote to the defendant that they knew nothing about the Carolina Phosphate Company, and asked for a financial statement in regard to it. This was given to them by the defendant in a letter of July twenty-seventh, in which it was stated that deliveries were to begin November, 1912, and in a letter of July thirtieth the statement was apparently satisfactory and the contracts were sent to the defendant for signature. These were not signed, and upon October 3, 1912, the defendant wrote as follows:

" I took up with the Carolina Phosphate Co., a few days ago, the matter of contract for rock, about which I had some correspondence with you. I find that they only want the contract for five years instead of six as I understood, and deliveries to begin November 1st, 1913. I am sending them contract covering sale of your regular form and will forward to you on receipt of same."

On October 7, 1912, the Prairie Pebble Company answered that that was not the contract made with them but that they were willing to modify the contract made and to make a contract for five years from November 1, 1912, instead of November 1, 1913, as suggested in defendant's letter of October 3, 1912. On October seventeenth the defendant wrote that he did not think the Carolina Phosphate Company would sign the contract, but would take it up and advise him, and upon October twenty-fourth sent to the Prairie Company a letter from the president of the Carolina Phosphate Company, declining to enter into any contract for delivery before November, 1913. Upon October thirty-first the Prairie Pebble Phosphate Company wrote to the defendant that he had evidently overlooked the terms of their contract made, and in conclusion said: " Our confidence in you and our experience with you convinces us that you will not permit the Carolina Phosphate Company to repudiate their contract, and we shall expect you to see that they fulfill the same in accordance with your purchase." On November first the Prairie Company wrote to the Carolina Company that they were prepared to deliver the 700 tons called for under the contract, and asked for shipping instructions. This ended the correspondence. Thereafter the Prairie Pebble Company assigned to the plaintiff, which brings this action against the defendant to recover upon the contract made.

The law is established that a contract with an agent for an undisclosed principal binds the agent, although the third party knew that he was acting only as an agent, unless there is a distinct understanding that the agent himself is not to be bound. (*De Remer* v. *Brown*, 165 N. Y. 410; *Cobb* v. *Knapp*, 71 id. 348.) Prior to June twenty-sixth, when the contract was closed between the parties, there is nothing whatever to indicate any intention of the parties that the agent was not here to be bound. So that when the defendant upon June twenty-sixth telegraphed his acceptance of the offer of the Prairie Pebble Company, the rights of the parties were then established, and the defendant could have required the Prairie Pebble Company to deliver the phosphate, and the Prairie Pebble Company could hold the defendant upon his liability.

The law is also established that, although the principal

was unknown at the time of the making of the contract, after the principal has been disclosed the third party has the right to elect whether he will hold the principal or the agent, and if he elects to hold the principal the agent will be discharged.   But to discharge the agent the election must be made with full knowledge of the facts.   (*Coleman v. First Nat. Bank of Elmira,* 53 N. Y. 388, 394.)   If this contract made by the agent had been authorized, there would be no difficulty in holding as matter of law that the plaintiff's assignor elected to hold the principal upon the contract when disclosed.   The defendant when he named the principal requested that the contract be made in its name. This the Prairie Pebble Company refused to do until it had a statement of the financial condition of the principal.   Upon the giving of that statement the Prairie Pebble Company was apparently content and sent on the contract, presumably in the name of the principal, for signature.   But at the time of this election the Prairie Pebble Company had no knowledge of the fact, which afterwards developed, that the defendant's contract was not authorized by his principal. That was not disclosed until October third, when, by the defendant's admissions, it appeared that he had misunderstood his principal, and that the contract which the principal authorized was a contract for five years, deliveries to commence November 1, 1913, instead of a contract for six years, deliveries to commence November 1, 1912, as had been in fact made by the defendant.   The election thus made in ignorance of the fact of the agent's lack of authority was ineffectual to release the agent, because not made with a full knowledge of all the facts upon which liability depended.   The principal not being bound, there could be no election, and for the mistake of fact the defendant is himself responsible, because in law an agent warrants his authority from his principal.   After knowledge of this lack of authority, all that the plaintiff's assignor did was to write to the defendant that he was expected to make the Phosphate Company perform their contract, " and we shall expect you to see that they fulfill the same *in accordance with your purchase.*"   From this letter there can be gleaned no evidence of any intention to release the defendant from liability, and the only other act of the plaintiff's

assignor is the tender of the phosphate rock to the Carolina Phosphate Company which was the tender contemplated in the contract as originally made.

It seems clear, therefore, that the liability which attached to the defendant upon his acceptance of the proposition of the Prairie Pebble Company upon June twenty-sixth has not been released by any effectual election to hold the Carolina Phosphate Company, and that the defendant remains liable upon his contract.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., and PAGE, J., concurred; LAUGHLIN and DOWLING, JJ., dissented.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.