17-572-cv
Trina Solar US, Inc. v. Jasmin Solar Pty Ltd

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2018

(Argued: October 17, 2018          Decided: April 2, 2020)

Docket No. 17-572-cv

_____

TRINA SOLAR US, INC.,

*Petitioner-Appellee,*

v.

JASMIN SOLAR PTY LTD,

*Respondent-Appellant,*

JRC-SERVICES LLC,

*Respondent.*

_____

Before:

POOLER, LOHIER, and CARNEY, *Circuit Judges.*

Jasmin Solar Pty Ltd ("Jasmin") appeals from a judgment of the United States District Court for the Southern District of New York (Caproni, J.) granting the petition of Trina Solar US, Inc. ("Trina") to confirm an arbitration award entered in its favor and denying the motions of Jasmin and JRC-Services LLC ("JRC") to vacate the award.  The commercial contract containing the arbitration

clause at issue is governed by New York law and was signed by Trina and JRC, but not by Jasmin. Because we are not persuaded that JRC acted as Jasmin's agent in executing the contract or that, in the alternative, Jasmin was bound to the arbitration clause under a direct benefits theory of estoppel, we REVERSE the District Court's judgment as it applies to Jasmin and REMAND the case to the District Court with instructions to enter an amended judgment dismissing the case as to Jasmin.

JEAN-CLAUDE MAZZOLA (Ruofei Xiang, *on the brief*), Mazzola Lindstrom LLP, New York, NY, *for Petitioner-Appellee* Trina Solar US, Inc.

JODY S. KRAUS, Jody S. Kraus Legal Consulting, New York, NY (Jacob W. Buchdahl, Arun S. Subramanian, Susman Godfrey LLP, New York, NY, *on the brief*), *for Respondent-Appellant* Jasmin Solar Pty Ltd.

LOHIER, *Circuit Judge*:

Jasmin Solar Pty Ltd ("Jasmin") appeals from a judgment of the United States District Court for the Southern District of New York (Caproni, J.) granting the petition of Trina Solar US, Inc. ("Trina") to confirm an arbitration award entered in its favor and denying the motions of Jasmin and JRC-Services LLC ("JRC") to vacate the award. The commercial contract containing the arbitration clause at issue is governed by New York law and was signed by Trina and JRC, but not by Jasmin. We have recognized various theories under which nonsignatories may be bound by arbitration agreements entered into by others. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995).

2

The District Court relied on two of those theories—agency and the direct benefits theory of estoppel—to find that Jasmin was bound by the arbitration clause. For the reasons that follow, we reverse the judgment as it applies to Jasmin.

**BACKGROUND**

1. Facts

Jasmin, an Australian company founded in 2012, provides solar power equipment and installation to Australian residents. In 2012 Jasmin sought to exploit a favorable government-backed solar power rebate program in Queensland, Australia that was soon set to expire. It began to negotiate a contract (the "Contract") with the United States-based division of Trina, a Chinese solar panel manufacturer, to buy Trina's solar panels. Trina demanded that a United States-based company sign the Contract as counterparty and submit the solar panel purchase orders, citing a need to protect the parties in the event litigation ensued and a desire to secure the sales commissions for Trina's division in the United States rather than its Australian arm. Jasmin yielded to Trina's demands. In August 2012 Jasmin authorized JRC, a Nevada-based company, to act as Jasmin's agent for all business dealings between Jasmin and

Trina, although it also recognized that Trina might contract with JRC as a principal in its own right rather than as an agent.

In November 2012 Trina and JRC signed the Contract, which was governed by New York law. The Contract refers to Trina as the "Seller," JRC as the "Buyer," and Trina and JRC—but not Jasmin—collectively as the "Parties." Appellant's App'x 32, 33, 42. Jasmin is described only once in the Contract, as JRC's "parent company" responsible for "guarantee[ing] payment" for solar panel shipments under the Contract. Appellant's App'x 38. Importantly, for our purposes, the Contract also contains an arbitration clause that provides that "[a]ny dispute or controversy or difference arising out of or in connection with this Contract . . . between the parties hereto . . . shall be submitted to binding arbitration." Appellant's App'x 40.

Shortly after the Contract was executed, Trina made clear that it viewed JRC, not Jasmin, as its client. A representative of Trina, John Dallapiazza, declared to a colleague that "all of the US contracts are being processed under JRC Services, LLC" and that "Jasmin Solar is no longer a client" of Trina. Appellant's App'x 264. Dallapiazza also made clear to the same colleague that Trina regarded JRC as the sole counterparty to the Contract, stating that

4

"currently [Trina] do[es] not have any executed contracts with Jasmin," and that Trina had "removed Jasmin Solar from the equation entirely." Appellant's App'x 264, 268. In the meantime, Jasmin continued to communicate with Trina regarding delivery schedules and credit line issues and to review purchase orders prior to delivery. In addition, Jasmin confirmed that it would pay the invoices for the solar panels delivered to JRC.

The relationship among the companies broke down in 2014 when, as JRC and Jasmin allege, Trina failed to deliver the correct model of solar panels on time, and JRC and Jasmin refused to pay the invoices as a result.

2. Procedural History

Relying on the Contract's arbitration clause, Trina initiated an arbitration proceeding against JRC and Jasmin. Jasmin asserted that it was not a party to the Contract and moved to dismiss the arbitration for lack of jurisdiction. The arbitrator denied Jasmin's motion. To preserve its objection, Jasmin declined to participate further in the arbitral proceedings, which included a trial before the arbitrator between JRC and Trina. Following trial, the arbitrator issued an award of $1,305,131 against JRC and Jasmin jointly and severally, even though the latter had refused to participate.

Trina petitioned the District Court to confirm the arbitration award against both Jasmin and JRC. Jasmin moved to vacate the award, arguing that it was not a party to the Contract and could not be required to arbitrate. In its decision, the District Court found that the parties had not clearly and unmistakably agreed to arbitrate arbitrability and reviewed de novo the arbitrator's decision that Jasmin was bound by the arbitration agreement. See Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 393 (2d Cir. 2011). Upon review, and as relevant here, the District Court denied Jasmin's motion to vacate, granted the petition to confirm, and denied as moot Jasmin's request for limited discovery on the issue of whether Jasmin was bound by the arbitration clause.

This appeal followed.

## DISCUSSION

We have explained that the determination about whether parties have agreed to arbitrate their disputes, and in particular whether nonsignatories to an arbitration agreement may nevertheless be bound by the agreement, is "often fact specific and differ[s] with the circumstances of each case." Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2d Cir. 1999) (quotation marks omitted). With that in mind, we review the

6

District Court's findings of fact relating to its confirmation of the arbitration award for clear error and its resolution of questions of law de novo.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947–48 (1995); Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción, 832 F.3d 92, 100 (2d Cir. 2016).

1.  Agency Theory

The District Court concluded, based on an agency theory, that Jasmin was bound by the terms of the Contract as a principal.  To determine whether Jasmin, a nonsignatory, was bound as a principal to the arbitration agreement between JRC and Trina, we consider, first, whether JRC had actual authority to act on Jasmin's behalf in its business dealings with Trina, and second, whether JRC and Trina, in executing the contract, intended to bind Jasmin as a disclosed principal or instead intended to exclude Jasmin as a party.  See Restatement (Third) Of Agency ("Restatement") § 6.01 cmt. b (Am. Law Inst. 2006) (explaining that "[a]n agent who acts on behalf of a disclosed principal may enter into a contract with a third party that by its terms excludes the principal as a party," and that an

agent's principal is not party to a contract between the agent and a third party if "the third party has not manifested assent to an exchange with the principal").[1]

The parties agree that when the Contract was signed JRC had actual authority to act on Jasmin's behalf in its business dealings with Trina. Their dispute centers on whether JRC and Trina intended JRC to act as Jasmin's agent in executing the Contract at issue here. See De Remer v. Brown, 165 N.Y. 410, 417 (1901) ("It is competent for an agent, although fully authorized to bind his principal, to pledge his own personal responsibility instead."); see also Fid. & Deposit Co. of Md. v. Goldman & Rio, 739 N.Y.S.2d 521, 521–22 (1st Dep't 2002), aff'd as modified on other grounds, 763 N.Y.S.2d 270 (2003); Turner Press, Inc. v. Gould, 429 N.Y.S.2d 239, 240 (2d Dep't 1980). We turn to New York law, which governs the Contract, to resolve that dispute.

New York courts have long held that "[u]nless the contract explicitly excludes the principal as a party," a court may consider extrinsic evidence to identify an unnamed principal to the contract, or to determine, more specifically, whether a nonsignatory is bound by the contract as a principal. Restatement

---

[1] "A principal is disclosed if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal and has notice of the principal's identity." Restatement § 1.04(2)(a).

8

§ 6.01 cmt. c; see also B&H Assocs. of NY, LLC v. Fairley, 50 N.Y.S.3d 495, 496–97 (2d Dep't 2017); Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569–70 (2002). A primary question for us, then, is whether the Contract "explicitly excludes" Jasmin as a party. We conclude that it does.

As an initial matter, a contract can explicitly exclude a principal as a party in a number of ways. We have found no New York law, and the parties do not point to any, that requires specific contractual language or mandates a one-size-fits-all approach to do so. For example, we are aware of no requirement that a contract state that "the principal is not a party to the contract," even though that language would surely qualify to explicitly exclude the principal. The fact that no single provision of the Contract states in so many words that Jasmin is excluded as a principal from its terms is therefore not dispositive. Instead, to determine whether Jasmin is explicitly excluded, we consider the language and structure of the Contract as a whole, without resorting to any extrinsic evidence of the parties' intentions.

Here, several features of the Contract persuade us that Jasmin is explicitly excluded as a principal and that the Contract does not contemplate Jasmin as a party.

To begin with, the first page of the Contract explicitly lists Trina as the only "Seller" and JRC as the only "Buyer." Appellant's App'x 32. The first full clause on the subsequent page then provides: "Seller [Trina] agrees to sell to Buyer [JRC], and Buyer agrees to purchase from Seller the Goods upon the price, terms and conditions herein set forth (Seller and Buyer each referred to herein as a 'Party' and collectively, the 'Parties')." Appellant's App'x 33. Jasmin is mentioned in the Contract only once, several pages later, when it is described as JRC's "parent company" responsible for "guarantee[ing] payment" for solar panel shipments under the Contract. Appellant's App'x 38. And the arbitration clause itself is expressly limited to "dispute[s] . . . between the parties." Appellant's App'x 40. Taken together, these clauses strongly support Jasmin's argument that it is not bound as a principal by the Contract generally or by the Contract's arbitration clause specifically.

Second, interpreting the Contract as a three-way agreement, with Trina as seller and both Jasmin and JRC as buyers, would certainly expose Jasmin to liability as a principal but also deprive several of the Contract's provisions of coherence. Take the guarantor clause (Section 5.51) mentioned above, for example. That clause provides, in relevant part: "Buyer's parent company

10

(Jasmin Solar Pty Ltd.) shall guarantee payment."  Appellant's App'x 38.

Although nothing in the abstract forecloses Jasmin from serving as both principal and guarantor, merging the two roles here would require that we read this clause in a practically unworkable way: "Jasmin's parent company (Jasmin) shall guarantee payment [for Jasmin]."  Or take, as another example, the contractual provision that permits termination "in writing by one Party to the other Party."  Appellant's App'x 33.  If we construed the Contract as a three-party contract that included Jasmin as a party, this clause would appear to permit termination of the Contract through a writing sent between JRC and Jasmin, meaning that could not have been intended.  The Contract's repeated references to "either" or "neither" party rather than "any party" or "none of the parties" only further reinforces our conclusion that the Contract is bilateral, not trilateral, in nature, binding Trina and JRC while excluding Jasmin from its terms.  See, e.g., Appellant's App'x 34 (Section 3.1), 39 (Section 9).

It is true that the Contract mentions Jasmin's Managing Director, Matthew Starr.  But in doing so, it merely describes Starr as the "Australia Contact" for JRC, without referring to Starr's affiliation with Jasmin.  Appellant's App'x 32.

11

Listing Starr as a contact for JRC, not Jasmin, suggests that Starr is JRC's agent, not that JRC is Jasmin's agent or that Jasmin is a principal under the Contract.

Finally, the Contract's third-party beneficiary clause, which provides that "[n]othing in this Contract is intended to confer on any person who is not a party hereto any right to enforce any term of this Contract," clearly supports our conclusion. Appellant's App'x 41 (Section 14.4). Under the clause, it is apparent that no one—other than the two entities that are designated "Parties" in the first clause of the Contract, namely Trina and JRC—has any rights whatsoever under the Contract. It would be odd to conclude that the Contract nevertheless burdens some additional, unnamed entity with obligations as a silent principal rather than, for example, a guarantor for one of the parties, as explicitly provided for here.

For these reasons, we conclude that the District Court erred when it determined that Jasmin was bound as a principal to the Contract under an agency theory.

2. Direct Benefits Theory of Estoppel

The District Court separately held that Jasmin was bound by the Contract's arbitration provision under the direct benefits theory of estoppel. See MAG

12

*Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61–63 (2d Cir. 2001). Under that theory, we have explained, "a company knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." *Id.* at 61 (quotation marks omitted). The benefits of exploiting the agreement, however, must "flow[] *directly* from the agreement," rather than indirectly from "the contractual relation of [the] parties to [the] agreement." *Id.* (emphasis added).

Under New York law, the "guiding principle" of the theory "is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause." *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 633 (2013). It is not enough for the nonsignatory to rely on an independent business relationship rather than the agreement itself to obtain the benefit. *See Thomson-CSF, S.A.*, 64 F.3d at 778–79. The nonsignatory beneficiary must actually invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit. *See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993).

Here, Jasmin surely benefited from the contractual relationship between Trina and JRC, as it ultimately received solar panels sold by Trina to JRC. But there is no record evidence that Jasmin ever invoked the Contract to demand delivery of the solar panels, and the Contract itself does not provide Jasmin any direct benefit. Nor did Jasmin, on this record, ever invoke Trina's duties under the Contract to seek or obtain a benefit. To the contrary, as we have noted, the Contract explicitly provides that "[n]othing in th[e] Contract is intended to confer on any person who is not a party hereto any right to enforce any term of this Contract." Appellant's App'x 41. Because Jasmin was not a party to the Contract, as explained above, it could not enforce any rights or duties under the Contract. For these reasons, we conclude, the District Court erred when it determined that Jasmin was estopped from avoiding the Contract's arbitration clause.

## CONCLUSION

For the foregoing reasons, because we are not persuaded that JRC acted as Jasmin's agent in executing the Contract or that, in the alternative, Jasmin was bound to the arbitration clause under a direct benefits theory of estoppel, we **REVERSE** the District Court's judgment granting Trina's motion to confirm the

14

arbitration award as to Jasmin and denying Jasmin's motion to vacate the arbitration award and **REMAND** the case to the District Court with instructions to enter an amended judgment dismissing the case as to Jasmin.

15